THE ABE STEIN COMPANY, Respondent, *v.* JULIUS ROBERTSON, Appellant.

SALES — GOODS TO BE SHIPPED — DAMAGES. Where, under a contract providing for the purchase and sale of a quantity of goods "expected to arrive," the seller to ship them immediately, they to be of a certain quality, any question of quality to be decided by the selling brokers, and their decision to be final and binding on both parties, modified by a letter adding the usual condition of "no arrival, no sale," the goods are shipped by the seller and tendered to the purchaser in fulfillment of the contract, and are

inspected by the brokers who determine that they are not of the kind nor quality required by the contract, the terms "expected to arrive" and "no arrival, no sale," apply only to the risks or perils of navigation or transportation, and the goods which the seller intended to deliver and which he tendered to the purchaser in performance of his contract having been determined, in the manner provided therein, not to be of the quality which he contracted to sell, in the absence of fraud, mistake or collusion on the part of the brokers, the purchaser is not bound to accept them, and is entitled to recover such damages as he sustains by the failure to deliver goods of the quality described in the agreement.

*Abe Stein Co.* v. *Robertson,* 38 App. Div. 311, affirmed.

(Argued April 25, 1901; decided May 10, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered April 7, 1899, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles E. Rushmore* and *Edwin F. Stern* for appellant. The contract was for the sale of goods to "arrive," and was conditional upon the arrival of the merchandise described therein. (*Lovatt* v. *Hamilton,* 5 M. & W. 644; *Stockdale* v. *Dunlop,* 6 M. & W. 224; *Johnson* v. *McDonald,* 9 M. & W. 600; *Azeman* v. *Casella,* L. R. [2 C. P.] 431; *Bowes* v. *Shand,* L. R. [2 App. Cas.] 455; *Russell* v. *Nicoll,* 3 Wend. 112; *Shields* v. *Pettie & Mann,* 4 N. Y. 122; *Benedict* v. *Field,* 16 N. Y. 595; *Field* v. *Moore,* Lalor's Supp. to Hill & Denio, 418; *Cleu* v. *McPherson,* 1 Bosw. 480.) The respondent's contention that the contract in suit contains an independent and express warranty of quality, and, therefore, that a different rule applies is untenable. (*Reed* v. *Randall,* 29 N. Y. 358, 362; *Sprague* v. *Blake,* 20 Wend. 64; *Bowes* v. *Shand,* L. R. [2 App. Cas.] 480; *Norrington* v. *Wright,* 115 U. S. 188; *Mondell* v. *Steel,* 8 M. & W. 870; *Heyworth* v. *Hutchinson,* L. R. [2 Q. B.] 447; *Muller* v. *Eno,* 14 N. Y. 597; *Day* v. *Pool,* 52 N. Y. 416; *Parks* v. *M. A. & T. Co.,* 54

N. Y. 591; *Brigg* v. *Hilton*, 99 N. Y. 529.) The court erred in its construction of the provision referring the question of quality to the selling brokers and their decision thereon, and in its rulings upon questions of evidence relating thereto. (*Heyworth* v. *Hutchinson*, L. R. [2 Q. B.] 447.)

*S. Livingston Samuels* for respondent. The words "goods to be shipped" constitute an absolute undertaking that goat skins, such as those described in the contract, shall be put on board a steamer for New York. (*Benedict* v. *Field*, 16 N. Y. 595; *Anderson* v. *Read*, 106 N. Y. 333; *Harrison* v. *Fortlage*, 161 U. S. 57; *Russell* v. *Nicoll*, 3 Wend. 112; *Ledon* v. *Havemeyer*, 121 N. Y. 179; *Simon* v. *Braddon*, 2 C. B. [N. S.] 324.) The term "expected to arrive" does not impair the obligation of the agreement of the seller to "ship" the goods described. (1 Pars. on Cont. [5th ed.] 564; *Hale* v. *Rawson*, 4 C. B. [N. S.] 85; *Havemeyer* v. *Cunningham*, 35 Barb. 515; *Russell* v. *Nicoll*, 3 Wend. 112; *Neldon* v. *Smith*, 36 N. J. L. 148; *Dike* v. *Reitlinger*, 23 Hun, 241; *Hale* v. *Rawson*, 4 C. B. [N. S.] 85; *Iasigi* v. *Rosenstein*, 141 N. Y. 414; *Harrison* v. *Fortlage*, 161 U. S. 57.) The contract contained an express warranty that the goods to be tendered should correspond with the goods contracted for, which is not affected by the term "expected to arrive," and entitles the plaintiff to damages for the breach. (*H. K. & S. Banking Corp.* v. *Cooper*, 114 N. Y. 388; *Dike* v. *Reitlinger*, 23 Hun, 241; *Muller* v. *Eno*, 14 N. Y. 597; *Day* v. *Pool*, 52 N. Y. 416; *F. C. Co.* v. *Metzger*, 118 N. Y. 260; *Brigg* v. *Hilton*, 99 N. Y. 527; *McParlin* v. *Boynton*, 8 Hun, 449; 71 N. Y. 604; *N. Y. S. M. M. P. Co.* v. *Remington*, 41 Hun, 218; *Carleton* v. *L., A. & Co.*, 149 N. Y. 137.) Plaintiff was entitled to reject the goods and recover damages by reason of their not corresponding in quality with those called for by the contract. (*Carleton* v. *L., A. & Co.*, 149 N. Y. 137; *Reed* v. *Randall*, 29 N. Y. 358; *C. I. Co.* v. *Pope*, 108 N. Y. 232; *Richardson* v. *Levi*, 69 Hun, 432; *Hargous* v.

*Stone,* 5 N. Y. 86; *Dutchess Co.* v. *Harding,* 49 N. Y. 321; *Gaylord Mfg. Co.* v. *Allen,* 53 N. Y. 515; *Oregon I. Co.* v. *Roach,* 117 N. Y. 527; *Studer* v. *Bleistein,* 115 N. Y. 316.) The decision of the selling brokers that the skins tendered did not correspond in quality with requirements of the contract is conclusive upon the parties. (*McParlin* v. *Boynton,* 8 Hun, 449; 71 N. Y. 604; *Carleton* v. *L., A. & Co.,* 149 N. Y. 137; *Perkins* v. *Giles,* 50 N. Y. 228; *Sweet* v. *Morrison,* 116 N. Y. 19; *Hopper* v. *Sage,* 112 N. Y. 530.)

MARTIN, J. The action was to recover damages for the breach of a contract between the parties for the purchase and sale of a quantity of goat skins. The agreement was made through brokers and evidenced by a bought-and-sold note dated May 24, 1895, modified by a letter dated the thirty-first of the same month.

The note was as follows:

"NEW YORK, *May 24th,* 1895.

"Sold for account of Messrs. L. F. Robertson & Son, to the Abe Stein Company. About 85,000 Tein-sin goat skins, firsts, 1⅝ to 2 lbs. avg., expected to arrive from China, at 22 cts. per lb. Goods to be shipped immediately by steamer or steamers to New York. About ⅔ of lot to be medium black haired skins, and the remainder ⅓ white or gray haired skins, of which 40 per cent. medium hair, 60 per cent. medium to long hair. Skins to be of the usual good quality of this province; any question of quality to be decided by selling brokers, and their decision to be final and binding on both parties. Terms net cash and to be taken from the wharf.

"JOHN ANDRESEN & SON, *Brokers.*"

The modification by letter was the addition of the usual condition of "no arrival, no sale."

Subsequently the defendant notified the brokers of the arrival of a portion of the goods, which were inspected by them in the presence of both parties, whereupon they determined that the goods tendered were not of the kind nor

quality described in the contract. As subsequent shipments were received, they were also examined in the same way, and the same conclusion was reached in regard to them. Upon such determinations the plaintiff refused to receive the goods shipped, and brought this action for damages sustained by the failure of the defendant to deliver the goods contracted for.

The goods were shipped by the defendant from China by steamers to New York, were tendered to the plaintiff in fulfillment of his contract, and were obviously intended to be furnished under the agreement. In other words, the parties agreed that the goods had arrived, and the question whether they were of the quality required by the contract was presented and determined in the manner therein provided.

As there was no serious question as to the amount of damages, the court ordered a verdict for the amount proved, for which a judgment was entered, with costs.

An analysis of the contract discloses that the defendant agreed to sell about eighty-five thousand goat skins, of the kind, weight, description, quality and for the price set out therein. It also shows that the goods were expected to arrive from China; that the defendant agreed that they should be shipped immediately by steamer or steamers to New York; that any question of quality should be decided by the selling brokers, and that their decision should be final and binding upon both parties. When the goods were inspected by them, the question whether they were such as the contract required was to be and was conclusively settled by the decision of the selling brokers, and could not be litigated in the absence of any claim or suggestion of fraud, mistake or collusion.

The appellant insists that the contract was conditional, not only as to its performance, but as to its effect, and that the provisions " expected to arrive from China " and " no arrival, no sale," were in effect an agreement that if the goods referred to in the contract, when they arrived, were not of the quality prescribed, the contract was at an end and the plaintiff could recover nothing for its breach. Doubtless the effect of those

14

provisions was to relieve the defendant from any breach of the contract occasioned by the non-arrival of the goods, provided it was not caused by fault of the seller. There are also other cases relied upon by the appellant where the existence of a right of recovery is conditional upon the arrival of goods of the quality specified in the agreement. But no such condition existed in this case, as there was an express agreement upon the part of the seller to make shipment of the goods particularly specified in the contract.

This contract was clearly executory, and the title was not intended to pass until the goods arrived and were delivered. (*Benedict* v. *Field*, 16 N. Y. 595, 597; *Anderson* v. *Read*, 106 N. Y. 333.) But the principle that if the goods specified and described in the contract do not arrive, a condition which terminates the contract exists and the seller is not liable, has no application where the contract contains either a warranty that the shipment has been made, or an express agreement upon the part of the seller to make shipment of goods described. In the latter case the contract is an existing and continuing one, and its provisions as to the quality of the goods are not only conditions precedent to any obligation upon the part of the buyer to accept them, but where the seller fails to ship goods of the quality required, the buyer is also entitled to such damages as he sustains by reason of such failure. (*Clark* v. *Fey*, 121 N. Y. 470; *Eppens, Smith & Wiemann Co.* v. *Littlejohn*, 27 App. Div. 22; *S. C.*, 164 N. Y. 187.) In these cases it was held that where a seller had agreed to ship goods, and their failure to arrive resulted from his omission to ship them, the failure was caused by the fault of the seller and did not operate to relieve him from his contract.

In this case, as the contract required the defendant to ship the goods described therein immediately by steamer or steamers to New York, he was bound not only to ship goods at the time and in the manner directed, but was likewise bound to ship goods of the quality required, and upon his failure to do so he was liable for a breach of the contract.

The parties expressly agreed that the question of quality

was to be conclusively determined by the brokers. That was the only question about which there was any controversy in this case. The undisputed evidence is that the brokers decided that the goods were not of the quality required by the contract, and as there was no fraud or collusion upon their part their decision concluded the parties upon that question.

The conclusion we have reached in this case is : 1. That the terms " expected to arrive " and " no arrival, no sale," apply only to the risks or perils of navigation or transportation. 2. That the goods which the defendant intended to deliver and which he tendered to the plaintiff in performance of his contract having been determined in the manner provided therein, not to be of the quality which he contracted to sell, the plaintiff was not bound to accept them. 3. It having been proved by undisputed evidence that the goods which the defendant shipped in pursuance of his contract arrived, and it having been conclusively established in the manner pointed out in the contract that they were not of the quality required, the plaintiff was entitled to recover such damages as he sustained by the defendant's failure to deliver goods of the quality described in the agreement. 4. Under these circumstances, with the additional one that there was no dispute as to the amount of damages sustained, the court properly directed a verdict, and the judgment should be affirmed, with costs.

PARKER, Ch. J., O'BRIEN, BARTLETT, VANN, LANDON and CULLEN, JJ., concur.

Judgment affirmed. _____