## NATIONAL SURETY CO. v. KANSAS CITY HYDRAULIC PRESS BRICK CO.

(Circuit Court of Appeals, Eighth Circuit. October 11, 1910.)

### No. 3,312.

APPEAL AND ERROR (§§ 1097, 1195*)—DETERMINATION ON FORMER WRIT OF ERROR—LAW OF CASE IN ERROR.

All questions of law determined on a former writ of error become the law of the case, both for the trial court and for the court of appeals on a second writ of error, provided the facts remain substantially the same.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4358–4368, 4661–4665; Dec. Dig. §§ 1097, 1195.*]

In Error to the Circuit Court of the United States for the Western District of Missouri.

Action by the Kansas City Hydraulic Press Brick Company against the National Surety Company. Judgment for plaintiff, and defendant brings error. Affirmed.

See, also, 167 Fed. 496, 93 C. C. A. 132.

Frank Hagerman (A. L. Berger, on the brief), for plaintiff in error.

James S. Botsford (Buckner F. Deatherage and Goodwin Creason, on the brief), for defendant in error.

Before SANBORN and ADAMS, Circuit Judges, and REED, District Judge.

ADAMS, Circuit Judge. This was a writ of error prosecuted from a judgment in favor of the plaintiff below, the Kansas City Hydraulic Press Brick Company, against the defendant below, the National Surety Company, for the purchase price of vitrified brick sold by the plaintiff's assignor, the Diamond Brick & Tile Company, to one Atkins for use by him in paving certain streets in Kansas City, Kan., pursuant to contracts made between him and the city for that purpose. The defendant surety company was the surety on Atkins' bond, which was conditioned for the prompt payment and discharge by him of all debts incurred for labor and material in the performance of the contracts. It was held when the case was here before (93 C. C. A. 132, 167 Fed. 496) that the defenses set up by the surety company were not good, and the judgment rendered in its favor by the trial court was reversed and the cause remanded for another trial. The defenses then considered and condemned were that the contracts between Atkins and the city were void by reason of the speci-

fication of a particular kind of brick for use in the paving, and, therefore, that no liability was incurred by the surety company on its bond given to insure the payment of the purchase price of brick used in performing the illegal contract, and that the statute of limitations had barred the action.

After the cause was remanded, the plaintiff withdrew its replication to defendant's answer and filed a demurrer to all of it except the general denial of the averments of plaintiff's petition. The answer demurred to consisted of allegations of fact disclosing the invalidity of the contracts between Atkins and the city as claimed by the surety company. Following what was conceived to be the instructions of this court, the trial court sustained the demurrer, found the facts to be as stated in plaintiff's petition, and rendered a judgment in favor of the plaintiff. Was this error?

This court held on the former writ of error that the specification of "No. 1 vitrified brick, Diamond Brand," the same being manufactured exclusively by plaintiff's assignor, when there were other makes of vitrified brick suitable for the purpose, vitiated under the laws of Kansas the subsequent contract made between Atkins and the city for doing the work; but held that fact did not vitiate the collateral contract executed by the defendant surety company to insure the payment by Atkins of his obligations for labor and material. We said, amongst other things:

"We can find between the bonds sued upon, and the contracts between Atkins and the city, no such connection as would justify extending the illegality of the latter to the former. * * * It follows that, if the bonds sued upon are illegal, the vice must spring, not from their connection with the contracts between Atkins and the city, but from the contracts between the plaintiff and Atkins for the purchase and sale of the brick. If the latter contracts are infected with illegality, the bonds cannot be resorted to as a means of collecting their consideration. * * * This brings us to the third ground upon which the defense of illegality is rested. It is urged that the Diamond Brick & Tile Company, by its conduct leading up to the award of the contracts to Atkins, became an aider and abettor of their illegality; that it was the prime mover in limiting the petitions and the specifications to its particular brand of brick; that its purpose was to induce the making of contracts in such a form that the successful bidder would be compelled to purchase the brick for making the improvement of that company; and that to allow the plaintiff to recover in the present suit would be to give judicial aid to a willful wrongdoer in gathering the fruits of his wrongdoing. This is the only defense that has apparent merit. * * *"

After referring to one contract between Atkins and the city, and stating that there was no evidence in the record tending to show that the plaintiff had anything to do with that transaction until more than a year after the contract was let to Atkins and the bond given, we said:

"As to the other two contracts, the plaintiff is the assignee of the Diamond Brick & Tile Company, and stands in its shoes. If the defense of illegality would be available against that company, it must prevail against the plaintiff. Did the conduct of the Diamond Brick & Tile Company involve such moral turpitude as to deprive it of any standing in a court of justice?"

Discussion then followed resulting in the conclusion that the conduct of the brick company was not willfully illegal. In reaching that

conclusion we had before us substantial evidence of all the facts pleaded by defendant in its answer demurred to after the remanding of the cause, and held that it did not amount to such willful wrongdoing as ought to defeat the right of the plaintiff to recover of the surety company for the purchase price of its brick, actually used by Atkins in the performance of his contract with the city.

Notwithstanding our former ruling, defendant's learned counsel have by oral argument and brief earnestly reargued the same questions as before. But this can avail them nothing. Our former rulings became the law of the case.

All questions of law determined on a first writ of error become, if the facts remain substantially the same, the law of the case both for the trial court and for this court on a second writ of error. Beiseker v. Moore, 98 C. C. A. 272, 174 Fed. 368, and cases cited. Counsel attempt to distinguish the present from the former case by arguing that the answer demurred to disclosed that the plaintiff and its assignor, the Diamond Brick & Tile Company, actively participated in a fraudulent scheme to secure the making of a contract between Atkins and the city whereby competition in the bidding for brick was suppressed, and that for this reason the case falls within the principles announced in the recent case of Continental Wall-Paper Co. v. Louis Voight & Sons Co., 212 U. S. 227, 29 Sup. Ct. 280, 53 L. Ed. 486. In order to approve of this contention, we must necessarily disregard the conclusions reached on the former writ of error when we held, after a careful review of all the facts, that there was nothing willfully illegal in the conduct of the brick and tile company in the matter. The facts then reviewed and characterized are fully as significant of fraud as the averments of the answer now under consideration. Accordingly, our former conclusions concerning their legal effect are, under the law of the case, now binding upon us.

Finding nothing in this record but an attempt to secure a review of our former judgment upon the same state of facts, the judgment of the Circuit Court must be affirmed.